UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

PRIME PROPERTY & CASUALTY INSURANCE INC.,

            Plaintiff,

-against-

ELANTRA LOGISTICS LLC, JASON VARGAS, ANSLEAUX TRUCKING CORP., PIERRE ANSLOT DERISSEAU, NEW VISIONS TRANSPORTATION GROUP, INC., REBECCA BLYTHE PRYOR, DEBRA CEDERBAUM, ANDREW FEINMAN, and JOSEPH DAUTRUCHE,

            Defendant.

**MEMORANDUM AND ORDER**

22-cv-191 (LDH) (PK)

---

LaSHANN DeARCY HALL, United States District Judge:

    Prime Property & Casualty Insurance Inc. ("Plaintiff") brings the instant action against Elantra Logistics LLC, Andrew Feinman ("Elantra Defendants"), Jason Vargas, Ansleaux Trucking Corp., Pierre Anslot Derisseau, New Visions Transportation Group, Inc., Rebecca Blythe Pryor, Debra Cederbaum, and Joseph Dautruche, seeking contractual indemnification stemming from an insurance policy between Plaintiff and Elantra Defendants. Plaintiff moves pursuant to Federal Rule of Civil Procedure 56, for summary judgment on Count IV of its Fourth Amended Complaint against Elantra Defendants.

1

## UNDISPUTED FACTS[1]

On April 27, 2019, Plaintiff issued a policy for commercial motor vehicle insurance ("Policy") to Defendant Elantra Logistics Inc. (Pl.'s 56.1 Statement ("Rule 56.1 Stmnt.") ¶ 1, ECF No. 155-2.) The coverage provided under the Policy was expressly conditioned upon Elantra "reviewing and properly executing and returning [to Prime a] Policy Receipt Form and Coverage Conditions Summary," which form expressly "require[d] [Elantra] to make certain representations and warranties regarding the coverage provided by the Policy . . . ." (*Id.* ¶ 6.) On May 14, 2019, Defendant Andrew Feinman signed the Policy Receipt Form and Coverage Conditions Summary on behalf of Elantra. (*Id.* ¶ 8.) The Policy contains a declaration that strictly limits its coverage to "scheduled autos and drivers." (*Id.* ¶ 2.)

The Policy's Scheduled Drivers Endorsement identifies five individuals as scheduled drivers. (*Id.* ¶ 3.) The Scheduled Drivers Endorsement also states that "[n]ew drivers and operators will not be added to this Policy until the Insured provides in writing the driver's name, date of birth, and driver's license number to the Insurer. Acceptance by the Insurer is subject to underwriting approval and may require additional premium." (*Id.*) The Policy further identifies fifteen motor vehicles that are "covered autos". (*Id.* ¶ 5.) The Policy Receipt Form and Coverage Conditions Summary provides that "Drivers and Autos must be scheduled for coverage to apply." (*Id.* ¶ 7.)

The Policy includes a "MCS-90 Endorsement". The MCS-90 Endorsement provides, in relevant part:

> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor

---

[1] The following facts are taken from the parties' statements of material fact pursuant to Local Rule 56.1 and annexed exhibits. Unless otherwise noted, the facts are undisputed.

2

> vehicles subject to the financial responsibility requirements of . . . . the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy . . . . It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured . . . .

(*Id.* ¶ 29.)  The MCS-90 Endorsement also states:

> The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

(*Id.* ¶ 36.)  When Plaintiff accepted Elantra's application for insurance coverage, it relied on the Personal Guarantee and Indemnity Agreement that Feinman signed on Elantra's behalf.  (*Id.* ¶ 49.)  According to the Personal Guarantee and Indemnity Agreement, Feinman

> personally indemnif[ies] and hold[s] the Insurer harmless from any and all costs, attorneys' fees, expenses, settlement proceeds or other funds expended or deemed owing as a result of . . . [a]ny claim involving a vehicle which was not properly scheduled on the Policy for which claim the Insurer is nonetheless required to make any payment as a result of any federal or state financial responsibility filing including without limitation, any MCS-90, Form E or similar undertaking. . . . [and] [a]ny claim involving a driver who was not properly scheduled on the Policy for which claim the Insurer is nonetheless required to make any payment as a result of any federal or state financial responsibility filing including without limitation, any MCS-90, Form E or similar undertaking.

(*Id.* ¶¶ 49–50.)

Elantra Defendants also entered a Loss Adjustment Agreement with Plaintiff, under which "[Elantra] agree[d] to indemnify, defend and hold [Plaintiff] harmless with respect to any and all accidents, losses or claims of whatever kind, occurring or arising during the term of the Policy, to the extent of any payment made by [Plaintiff] on account of a Non-Covered Claim."  (*Id.* ¶ 38.)  According to the Loss Adjustment Agreement, "all claims as to non-scheduled drivers or autos will qualify as Non-Covered Claims for purposes of this agreement."  (*Id.* ¶ 39.)

3

On October 18, 2019, Defendant Pierre Derisseau was involved in a multi-vehicle collision on the Brooklyn Queens Expressway while driving a 2005 Freightliner truck.  (*Id.* ¶ 9.)  At the time of the collision, the 2005 Freightliner truck was registered to Defendant Ansleaux Trucking Corp.  (*Id.* ¶ 10.)  Moreover, at that time, Derisseau was not a scheduled driver and the 2005 Freightliner was not a scheduled vehicle under the Policy.  (*Id.* ¶ 11.)

About an hour after the collision, Elantra's insurance broker requested that Plaintiff add Derisseau as a "scheduled driver" and the 2005 Freightliner as a "covered auto".  (*Id.* ¶ 13.)  Neither Elantra nor its insurance broker reported the collision at that time.  (*Id.* ¶ 14.)  Plaintiff responded the same day with a quoted premium cost that Elantra would be required to pay as consideration for Plaintiff's agreement to add Derisseau and the 2005 Freightliner to the Policy.  (*Id.* ¶ 15.)  Two days after the collision, Elantra Defendants signed the premium quote, and on October 21, 2019—three days after the collision—Plaintiff issued endorsements that added Derisseau and the 2005 Freightliner to the Policy.  (*Id.* ¶¶ 16–18.)

Elantra Defendants did not report the collision to Plaintiff at any time after it occurred.  (*Id.* ¶ 19.)  Plaintiff first learned of the collision on June 22, 2020, when Vargas filed a lawsuit against Elantra for injuries he allegedly sustained during the October 18, 2019 collision.  (*Id.* ¶ 20.)  On July 2, 2020, Plaintiff's counsel represented to Elantra that Plaintiff is not obligated under the Policy to defend or indemnify Elantra from the claims being made in the Vargas's suit against Elantra.  (*Id.* ¶ 22.)  However, Plaintiff offered to retain an attorney at its own expense to represent Elantra in Vargas's suit against it.  (*Id.*)  Initially, Elantra accepted Plaintiff's offer but, after several months, Elantra's counsel informed Plaintiff that Elantra no longer wanted Plaintiff to provide a defense in that matter.  (*Id.* ¶ 24.)

4

Travelers Personal Insurance Company ("Travelers"), the auto insurer that issued the insurance policy to Vargas for the vehicle that was involved in the collision, filed suit in Nassau County Supreme Court against Plaintiff seeking payment for Vargas's alleged injuries caused by the October 18, 2019 collision. (*Id.* ¶ 26.) The parties to the Nassau County suit agreed by stipulation that the collision involved both a vehicle and a driver that were not covered by the Policy and that the request to add Derisseau and the 2005 Freightliner to the Policy were made after the October 18, 2019 Collision had already occurred. (*Id.* ¶ 27.) Nevertheless, Travelers argued that Plaintiff was still liable for Vargas's injuries based on the MCS-90 endorsement contained in the Policy. (*Id.* ¶ 28.) After the Nassau County Supreme Court denied Plaintiff's motion to dismiss Travelers's claim, the parties settled and Plaintiff paid Travelers $150,000. (*Id.* ¶¶ 30, 35.) Elantra Defendants expressly refused to pay or contribute to that settlement. (*Id.* ¶ 34.)

## STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant[s] are entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The movants bear the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 23 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). Where the non-movant bears the burden of proof at trial, the movants' initial burden at summary judgment can be met by pointing to a lack of evidence supporting the non-movant's claim. *Celotex Corp.*, 477 U.S. at 325. Once the movants meet their initial burden, the non-movant may defeat summary

5

judgment only by producing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Anderson*, 477 U.S. at 250; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). The Court must believe the evidence of the non-movant and draw all justifiable inferences in his favor, *Anderson*, 477 U.S. at 255, but the non-movant must still do more than merely assert conclusions that are unsupported by arguments or facts. *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996).

## DISCUSSION

Through Count IV of Plaintiff's Fourth Amended Complaint, Plaintiff seeks reimbursement from Defendants for the settlement payment Plaintiff made in connection with the October 18, 2019 collision. (Fourth Am. Compl. ¶¶ 98–106, ECF No. 104.) Plaintiff maintains it is entitled to a judgment as a matter of law on Count IV based on, *inter alia*, the terms of the Policy. (Mem. Supp. Pl.'s Mot. Summ. J. ("Pl.'s Mem.") at 2, ECF No. 167-2.) Defendants maintain that such a determination is premature. (Mem. in Opp'n Pl.'s Mot. Summ. J. ("Defs.' Mem.") at 1–2, ECF No, 168.) Defendants are wrong.

In New York, interpretation of an insurance agreement is a question of law governed by general rules of contract. *See, e.g.*, *Crescent Beach Club LLC v. Indian Harbor Ins.*, 468 F. Supp. 3d 515, 540 (E.D.N.Y. 2020). That is, as with any contract, the Court must "give effect to the intent of the parties as expressed in the clear language of the contract." *Intelligent Digital Sys., LLC v. Beazley Ins. Co.*, 716 F. App'x 1, 3 (2d Cir. 2017) (summary order). And, "the words and phrases in a contract should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." *Olin Corp. v. American Home Assur. Co.*, 704 F.3d 89, 98–99 (2d Cir. 2012).

6

That said, any insurance contract to insure a motor carrier must be read against the requirements set forth in the Motor Carrier Act of 1980 ("MCA"), 49 U.S.C. § 30101 *et seq.* Among other things, the MCA requires carriers that operate motor vehicles for transporting non-hazardous property in interstate commerce to carry proof of financial responsibility of at least $750,000.  49 U.S.C. § 31139(b); 49 C.F.R. § 387.7.  An MCS-90 Endorsement is one way for a motor carrier to establish its compliance with the financial responsibility requirements.  49 C.F.R. § 387.7(d).  The MCS–90 Endorsement "shifts the risk of loss for accidents occurring in the course of interstate commerce away from the public by guaranteeing that an injured party will be compensated even if the insurance carrier has a valid defense based on a condition in the policy." *Pierre v. Providence Washington Ins. Co.*, 99 N.Y.2d 222, 226 (N.Y. 2002).  It is "in effect, suretyship by the insurance carrier to protect the public–a safety net . . . . [I]t simply covers the public when other coverage is lacking." *Canal Ins. Co. v. Carolina Cas. Ins.*, 59 F.3d 281, 283 (1st Cir. 1995).

In accordance with the MCA, attached to the Policy is an MCS-90 Endorsement, which provides that [Plaintiff] agrees to pay "any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles" regardless of whether the vehicle is specifically described in the policy and despite the insured's failure to comply with policy conditions. (Rule 56.1 Stmt. ¶ 29.)  The MCS-90 Endorsement also requires that Elantra Defendants reimburse the Plaintiff for "any payment made by [Plaintiff] on account of any accident, claim or suit involving a breach of the terms of the policy, and for any payment that [Plaintiff] would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement." (*Id.* ¶ 36.)

7

Here, Defendants do not dispute that Derisseau was involved in a collision with Vargas while driving a Freightliner, (*id.* ¶ 9), or that neither Derisseau nor the freightliner were covered under the Policy at the time of the collision, (*id.* ¶¶ 10–11).  It is also undisputed that Plaintiff entered a settlement agreement with Travelers to pay Vargas's claim after Travelers alleged that Plaintiff was obligated to do so pursuant to the MCS-90 Endorsement.  (*Id.* ¶¶ 30, 35.)  And, critically, the plain language of the MCS-90 Endorsement requires Elantra Defendants to reimburse Plaintiff for *any* payment made by Plaintiff for claims it would not have been obligated to make but for the terms of the MCS-90 Endorsement, including settlement payments. *See Integral Ins. Co. v. Lawrence Fulbright Trucking, Inc.*, 930 F.2d 258, 260–61 (2d Cir. 1991) (interpreting the plain language of a similar MCS-90 Endorsement to require "only (1) a final judgment against the insured which (2) arises out of the negligent operation, maintenance or use of the motor vehicle."); *see also T.H.E. Ins. Co. v. Larsen Intermodal Servs., Inc.*, 242 F.3d 667, 673–74 (5th Cir. 2001) (holding that the MCS-90 Endorsement gives an insurer a right of reimbursement from its insured as to claims covered by the endorsement but not ordinarily covered under the policy).  Against these facts, Plaintiff has a right of indemnity from Defendants for the judgment arising from the settlement agreement with Travelers.

Instead, Elantra Defendants seek to delay such a finding on the grounds that it is premature.  Again, Elantra Defendants do not, nor can they, dispute the facts upon which this Court's conclusions rest.  They point the Court to *Prime Prop. & Cas. Ins. Inc. v. Elantra Logistics Inc.*, No. 21CV2117AMDCLP, 2022 WL 94404, at *1 (E.D.N.Y. Jan. 10, 2022).  In that case, the plaintiff sought a declaratory judgment to declare its rights and obligations under its own insurance policy against several defendants in connection with an auto accident involving one of the plaintiff's insureds.  *Id.* at *2–3.  The defendants had no contractual

8

relationship with the plaintiff and were not parties to the separate, pending motor vehicle lawsuit where liability for the accident was at issue. *Id.* at *3. The defendants had made no claims against plaintiff and there was no judgment awarded against the plaintiff. On those facts, the court dismissed that claim against the defendants because "[d]eclaring the plaintiff's rights and obligations under its insurance policy with respect to the defendants would require the Court to make a series of assumptions about a case that does not exist and may never exist." *Id.* at *4. That decision is inapposite to the instant case. Here, there was an underlying lawsuit against the Elantra Defendants and Prime settled a claim brought against it by Travelers in connection with the suit against Elantra Defendants.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment on Count IV of the Fourth Amended Complaint is GRANTED.

SO ORDERED.

Dated: Brooklyn, New York  
September 30, 2024

/s/ LDH  
LaSHANN DeARCY HALL  
United States District Judge

9